FILED
08/05/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 4, 2024

## STATE OF TENNESSEE v. DAVID SYLVESTER CAVETTE

**Appeal from the Circuit Court for Carroll County**
No. 21CR164    Bruce Irwin Griffey, Judge
_____

### No. W2023-01375-CCA-R3-CD
_____

A Carroll County jury convicted the Defendant, David Sylvester Cavette, of evading arrest involving the risk of death or injury. The trial court sentenced the Defendant to three years and placed him on probation after serving 180 days in custody. On appeal, the Defendant asserts that the State failed to prove either that he intentionally fled from police officers or that his flight created a risk of death or injury to others. Upon our review, we respectfully disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;
Judgment of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and TIMOTHY L. EASTER, J., joined.

Mitchell A. Raines, Assistant Public Defender – Tennessee District Public Defenders Conference Appellate Division, Franklin, Tennessee (on appeal); and Timothy D. Nanney, Assistant District Public Defender, Camden, Tennessee (at trial), for the appellant, David Sylvester Cavette.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Matthew F. Stone, District Attorney General; and W. Michael Thorne, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On May 20, 2021, Officer Cody Coleman identified the Defendant driving a vehicle through a residential neighborhood in McKenzie, Tennessee. Officer Coleman knew that

the Defendant was the subject of an active arrest warrant. He and other officers activated their emergency equipment to stop the Defendant. The Defendant pulled over at an intersection shortly after the officers pursued him.

Officer Coleman approached the Defendant's car and instructed him to put the vehicle in park and to "just stop." Instead of complying, however, the Defendant suddenly accelerated away from the officers. Officer Coleman's body camera captured the events as they unfolded.

The Defendant led the officers on a circuitous route through a residential neighborhood. Although the posted speed limit throughout the neighborhood was 25 miles per hour, the Defendant ran through a stop sign and traveled between 30 and 35 miles per hour as he led the pursuit. The video showed at least one bystander close to the path of the flight, as well as four other people outside their houses and near the road later in the chase. After driving more than a mile, the Defendant stopped in a Dollar Tree parking lot, where the police apprehended him without incident.

On September 8, 2021, a Carroll County grand jury charged the Defendant with, among other things, evading arrest while creating a risk of death or injury to others, a Class D felony.[1] At trial, the State called Officer Coleman to testify and played the video of the initial stop, the Defendant's flight, and his later arrest. For his part, the Defendant testified at trial and admitted that he knew there was an outstanding warrant for his arrest and that he would be going to jail. The Defendant further said that he knew officers were trying to stop him but that he was trying to get to a safe place to pull over because he had his dogs with him. The Defendant also stated that he did not hear Officer Coleman instruct him to put his vehicle in park during their first encounter and told the officer that he was "just going right here down the street."

Following the trial, the jury found the Defendant guilty as charged. The trial court sentenced him to a term of three years that was suspended after serving 180 days in custody. The Defendant filed a timely motion for a new trial, which the trial court denied by a written order filed on October 2, 2023. The Defendant filed a timely notice of appeal three days later.

---

[1] The Defendant was also indicted for other offenses including traffic offenses and possession of a controlled substance. The Defendant has not appealed any issues related to those charges, and, as such, we do not address them further. *See* Tenn. R. App. P. 13 (b) ("Review generally will extend only to those issues presented for review.").

**ANALYSIS**

In this case, the Defendant argues that the evidence is legally insufficient to support his conviction because the State failed to prove that he intentionally fled or eluded law enforcement. Alternatively, he asserts that he did not cause a risk of death or injury to any person. In response, the State argues that the evidence is legally sufficient to support the elements of the offense and that the Defendant's conviction should be affirmed. We agree with the State.

**A.      STANDARD OF APPELLATE REVIEW**

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotation marks and citation omitted).

**B.      INTENTIONAL FLIGHT**

The Defendant first argues that the State failed to prove that he intentionally fled from law enforcement officers. More specifically, he asserts that he did not intend to elude the officers but only to find a safe place to stop "so that he could be arrested in a way that did not threaten either his or his dogs' safety." In response, the State contends that the proof is sufficient to establish this element of the offense because the Defendant's conscious objective was to drive away from, or try to avoid, the presence of the officers. We agree with the State.

We begin, as we must, with the statute's language. At the time of the offenses in this case, Tennessee Code Annotated section 39-16-603(b)(1) (Supp. 2020) provided that

3

"[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." As we have recognized, "[t]he evil at which the statute is directed is the same whether one flees on foot or motor vehicle, that is, to discourage flight from a police officer performing his or her official duties." *State v. Calloway*, No. M2004-01118-CCA-R3-CD, 2005 WL 1307800, at *8 (Tenn. Crim. App. June 2, 2005), *no perm. app. filed*.

By its plain language, the statute requires proof of an "intentional" mental state. As applied to nature-of-conduct elements such as fleeing or eluding, "intentional" conduct exists when the person's "conscious objective or desire [is] to engage in the conduct[.]" *See* Tenn. Code Ann. § 39-11-302(a) (defining "intentionally" as applied to nature-of-conduct elements). As to the term "flee" used in this statute, we have previously defined the term as "necessarily involv[ing] the concept of fleeing *from the presence* of an officer." *See State v. Lewis*, 978 S.W.2d 558, 563 (Tenn. Crim. App. 1997) (emphasis added); *see also State v. Johnson*, No. W2000-00386-CCA-R3-CD, 2001 WL 721082, at *7 (Tenn. Crim. App. June 26, 2001) ("One flees who simply 'hurr[ies] toward a source of security or protection.'" (quoting *Webster's Third New International Dictionary* 868 (3d ed. 1993)), *perm. app. denied* (Tenn. Oct. 22, 2001). As such, to establish this element of the offense, the State must prove that a defendant's "conscious objective or desire" was to engage in the conduct of fleeing from the presence of law enforcement officers.

Because proof of intent is often based on circumstantial evidence, *State v. Hall*, 682 S.W.3d 143, 157 (Tenn. 2019), our case law has emphasized several factors that may be considered in assessing whether a flight is intentional. For example, we have recognized the following circumstances, among others, as showing an intention to flee:

- when the defendant violates traffic laws while fleeing, *see State v. Webb*, No. W2008-00094-CCA-R3-CD, 2009 WL 1026032, at *6 (Tenn. Crim. App. Apr. 16, 2009), *perm. app. denied* (Tenn. Sept. 28, 2009);

- when the defendant suddenly accelerates, and the evasion is at high speeds or exceeds the speed limit, *see, e.g.*, *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *2 (Tenn. Crim. App. June 28, 2023), *no perm. app. filed*; *State v. Small*, No. W2022-01349-CCA-R3-CD, 2023 WL 6307501, at *4 (Tenn. Crim. App. Sept. 28, 2023), *perm. app. denied* (Tenn. Mar. 6, 2024);

- when the defendant engages in a lengthy evasion, *see State v. Myers*, No. W2017-01917-CCA-R3-CD, 2019 WL 1950058, at *8 (Tenn. Crim. App. Apr. 30, 2019), *perm. app. denied* (Tenn. July 17, 2019);

4

- when the defendant passes places to pull over safely, *see State v. Wellington*, No. M2013-01271-CCA-R3-CD, 2014 WL 2568149, at *6 (Tenn. Crim. App. June 9, 2014), *perm. app. denied* (Tenn. Oct. 27, 2014);

- when the defendant continues to flee when pursued by multiple police cars, *see State v. Ferguson*, No. 02C01-9808-CC-00244, 1999 WL 410425, at *3 (Tenn. Crim. App. June 17, 1999);

- when the defendant admits that he or she continued to drive away from police after seeing lights or hearing sirens, *see, e.g.*, *State v. Nelson*, 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008); *State v. Branch*, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *9 (Tenn. Crim. App. July 28, 2014), *perm. app. denied* (Tenn. Dec. 19, 2014); and

- when the defendant initially stops in response to an officer's signal but then drives away during the encounter, *see, e.g.*, *State v. Carpenter*, No. W2022-01710-CCA-R3-CD, 2023 WL 6441953, at *7 (Tenn. Crim. App. Oct. 3, 2023), *no perm. app. filed*; *State v. Gann*, No. 01C01-9704-CC-00164, 1998 WL 265495, at *5 (Tenn. Crim. App. May 27, 1998).

In this case, the Defendant was initially stopped by three law enforcement officers in two cars at an intersection, where they instructed the Defendant to place the vehicle in park and to "just stop" the car. However, instead of complying, the Defendant accelerated away from the officers up a narrow, unmarked road and then through a residential neighborhood. Officers followed the Defendant for over a mile, with the pursuit lasting almost three minutes and involving multiple changes in direction. During this time, the Defendant exceeded the posted speed limits, ran through a stop sign, and passed several business parking lots where he could have stopped safely.

Throughout the entirety of the pursuit, each officer had his emergency lights and sirens activated, and, in the video recording of the pursuit, an officer can be heard giving the Defendant verbal commands to stop over a loudspeaker. Later at trial, the Defendant admitted to knowing that he had an outstanding warrant for his arrest and that "[he] knew [he] was going to jail." From these circumstances, a rational juror could certainly infer that the Defendant's conscious objective or desire was to avoid the presence of the police. *See Gann*, 1998 WL 265495, at *5 (finding intentional flight when the defendant pulled off after being stopped, drove half a mile, and made two turns during the pursuit).

In pressing his argument to the contrary, the Defendant raises three points in particular. First, he asserts that a person can evade arrest only if "the flight is done in a hurried, evasive, or extensive way indicating an intent to avoid or escape an anticipated

arrest and prosecution." However, felony evading arrest does not require that the defendant be aware that an officer is attempting to initiate an arrest. Instead, the crime under subsection (b) is committed when the Defendant's conscious objective or desire is to flee or elude police simply "after having received any signal from such officer to bring the vehicle to a stop." *See also State v. Olivier*, No. M2017-01618-CCA-R3-CD, 2018 WL 3530843, at *4 (Tenn. Crim. App. July 23, 2018) ("This court has concluded that the statutory language is straightforward and unambiguous that subsection (b) requires only a signal to stop, and not an arrest or attempted arrest." (citation and internal quotation marks omitted), *no perm. app. filed*. As we recognized above, the proof is legally sufficient to support such a finding.

Second, the Defendant argues that the circumstances of the flight do not indicate an intention to flee. In particular, he notes his slow speed, compliance with some traffic laws, and the short distance of the pursuit. We agree that a jury may consider these circumstances when evaluating a defendant's intent. However, they are not necessarily inconsistent with an intent to keep driving after receiving a signal to stop. In fact, we have sustained convictions for evading arrest when the defendant traveled at slow speeds. *See State v. Schmitz*, No. M2019-01254-CCA-R3-CD, 2021 WL 529360, at *3 (Tenn. Crim. App. Feb. 12, 2021) (affirming conviction despite defendant traveling at 30 miles per hour for several minutes), *no perm. app. filed*. We have also affirmed convictions when the distance was shorter than that traveled here. *See State v. Wellington*, No. M2013-01271-CCA-R3-CD, 2014 WL 2568149, at *6 (Tenn. Crim. App. June 9, 2014) (more than a mile), *perm. app. denied* (Tenn. Oct. 27, 2014); *see also State v. Olivier*, No. M2017-01618-CCA-R3-CD, 2018 WL 3530843, at *5 (Tenn. Crim. App. July 23, 2018) (one-half of a mile), *no perm. app. filed*; *State v. Branch*, No. W2013-00964-CCA-R3-CD, 2014 WL 3744322, at *9 (Tenn. Crim. App. July 28, 2014) (one block), *perm. app. denied* (Tenn. Dec. 19, 2014). As we have made clear previously, the speed and distance of the flight are not determinative; instead, the question is whether the defendant "intentionally continued driving, after having received a signal to stop[.]" *Johnson*, 2001 WL 721082, at *7.

Finally, and in a variation on the theme, the Defendant contends that he did not wish to flee from the officers, but only desired to find a safe place to stop. However, absent being relevant to a general defense,[2] a defendant's subjective reason for refusing to stop is not particularly relevant otherwise. Indeed, this court has rejected the argument that a driver cannot "intentionally flee" if he or she is merely "noncompliant or neglectful" in not

---

[2] We have recognized the possibility that a general defense such as duress could apply against a charge of evading arrest. *See, e.g.*, *State v. Rapier*, No. W2013-02297-CCA-R3-CD, 2014 WL 6680682, at *7 (Tenn. Crim. App. Nov. 26, 2014), *perm. app. denied* (Tenn. Mar. 12, 2015). The statute itself also provides for a general defense as well. Tenn. Code Ann. § 39-16-603(b)(2); *cf. State v. Hart*, 676 S.W.3d 103, 110 (Tenn. Crim. App. 2023) ("The legality of the arrest itself is a general defense to the crime of evading arrest.").

stopping when signaled to do so. *See Johnson*, 2001 WL 721082, at *7. In this case, Officer Coleman's video shows that the Defendant passed several business parking lots during his flight where he could have safely pulled over. A rational juror could have reasonably inferred that the Defendant's decision not to pull over during these opportunities supported his intention to flee from the presence of the officers. *Cf. Wellington*, 2014 WL 2568149, at *6. We conclude that the proof is legally sufficient to support a finding that the Defendant intentionally fled or attempted to evade law enforcement officers.

## C.     RISK OF DEATH OR INJURY

The Defendant next argues that the proof is insufficient for a jury to find that his conduct in fleeing from law enforcement officers did not pose a risk of death or injury to others. It is not an element of the offense of felony evading arrest that the flight "create[d] a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties." Tenn. Code Ann. § 39-16-603(b)(1) (Supp. 2020) (subsequently amended). Instead, this fact is relevant to sentencing, as its presence will increase the offense class from a Class E felony to a Class D felony. Tenn. Code Ann. § 39-16-603(b)(3)(A), (B) (Supp. 2020) (subsequently amended). As such, because this fact "exposes a defendant to a greater potential sentence," it "must be found by a jury, not a judge, and established beyond a reasonable doubt[.]" *See, e.g.*, *Cunningham v. California*, 549 U.S. 270, 281 (2007) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

As our supreme court has made clear, "[b]y the plain language of the statute, proof of actual injury or death is not necessary for conviction. All that need be shown is that the defendant evaded arrest and that in so doing, he created the *risk* of death or injury." *State v. Turner*, 193 S.W.3d 522, 525 (Tenn. 2006). The court has also rejected an "overly narrow" interpretation of the statute that would require others in proximity to the defendant to actually react or be affected by the defendant's flight. *See State v. Cross*, 362 S.W.3d 512, 524 (Tenn. 2012); *State v. Smith*, No. E2019-01572-CCA-R3-CD, 2020 WL 5248516, at *3 (Tenn. Crim. App. Sept. 3, 2020) ("Contrary to the defendant's suggestion, the State was not required to show that other drivers were forced to take evasive action to support a conviction of either reckless endangerment or evading arrest."), *no perm. app. filed*. As such, focusing on the *risk* of death or injury in this context, our cases have emphasized the following factors, among others:

- the presence of other motorists or pedestrians in the area where the pursuit occurred, *Cross*, 362 S.W.3d at 523-24; *State v. Brewer*, No. W2014-01347-CCA-R3-CD, 2015 WL 4060103, at *6 (Tenn. Crim. App. June 1, 2015), *no perm. app. filed*;

7

- the defendant's traveling at high speeds with pursuing officers, *see Cross*, 362 S.W.3d at 524; *State v. Lumley*, No. W2023-00622-CCA-R3-CD, 2024 WL 2698896, at *5 (Tenn. Crim. App. May 24, 2024), *no perm. app. filed*;

- the defendant's operating the vehicle dangerously, such as by ignoring traffic control devices, weaving through traffic, or driving in oncoming traffic lanes, *see Turner*, 193 S.W.3d 522; *State v. Holliday*, No. W2023-01097-CCA-R3-CD, 2024 WL 3412257, at *4 (Tenn. Crim. App. July 15, 2024), *perm. app. open; State v. Johnson*, No. W2022-00234-CCA-R3-CD, 2023 WL 3319060, at *4 (Tenn. Crim. App. May 9, 2023), *no perm. app. filed*; and

- the path of the flight taking place in a residential neighborhood or a busy commercial area, *see State v. Small*, No. W2022-01349-CCA-R3-CD, 2023 WL 6307501, at *4 (Tenn. Crim. App. Sept. 28, 2023), *perm. app. denied* (Tenn. Mar. 6, 2024).

Viewing the evidence in a light most favorable to the State, we conclude that, while not overwhelming, the proof is sufficient to support a finding that the Defendant's flight created a risk of death or injury. The testimony and video evidence show that the Defendant operated his vehicle in a dangerous manner as he evaded law enforcement officers. He exceeded the speed limit through a residential neighborhood by as much as ten miles per hour. Indeed, at the very point where the Defendant first accelerated away from officers, there was a posted speed limit sign of 25 miles per hour with a second sign below it saying, "Slow Children at Play." We note that many of the houses and cars were close to the roadways, and the roads shown on the video were narrow and without shoulders, sidewalks, or centerline or edge markings. The Defendant also drove through a stop sign during the pursuit.

The video shows at least five people present at varying distances from the road. However, it shows one bystander seemingly standing close to the road at the corner of Mable and Linden Streets as the cavalcade went by. As to the presence of this bystander in particular, the Defendant argues that he was not in a "zone of danger" or "in imminent danger of death or serious bodily injury." However, the statute does not require that a bystander be placed in "imminent risk of death or serious bodily injury," and the supreme court in *Cross* rejected a similar argument as being "overly narrow." From our review of the record, we cannot say that only an irrational trier of fact could find that the Defendant created a *risk* of injury to others.

Important to this analysis is the standard of appellate review, which seeks to preserve "the factfinder's role as weigher of the evidence[.]" *Jackson*, 443 U.S. at 319. In this role, the jury is able to consider the evidence introduced at trial "in light of their own experience

and knowledge." *State v. Adams*, 405 S.W.3d 641, 650 (Tenn. 2013). Indeed, "jurors are free to use their common knowledge and judgment derived from experience, observation, and reflection to decide whether a fact is logically deducible or reasonably inferred from the evidence." *State v. Nesbit*, 978 S.W.2d 872, 886 (Tenn. 1998).

Our role is different. This court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19 (citation omitted); *State v. Hamrick*, 688 S.W.2d 477, 481 (Tenn. Crim. App. 1985). Instead, we ask whether any rational trier of fact *could* reach the jury's conclusion when all the evidence is viewed in a light most favorable to the State and all reasonable inferences are drawn in its favor. *Jackson*, 443 U.S. at 319.

In this case, we agree that a rational juror could reasonably draw several conclusions from the evidence using her own experience, observation, and reflection. But one reasonable conclusion that such a juror *could* reach is that the Defendant's actions created a *risk* of injury to others, including to the bystander we see in the video. Thus, even if we disagreed with the jury's weighing of the evidence—and we do not—it is not the role of an appellate court to reweigh the evidence or substitute our inferences for those made by the jury. *State v. Hart*, 676 S.W.3d 103, 107 (Tenn. Crim. App. 2023). We conclude that the evidence is legally sufficient to support the Defendant's conviction.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to establish that the Defendant intentionally fled from law enforcement officers and that his flight created a risk of death or injury to other persons. Accordingly, we respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE

9